UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-81265-ALTMAN

**RAYQUAN BURGESS**,

    *Plaintiff*,

*v.*

**PALM BEACH COUNTY**, *et al.*,

    *Defendants.*

_____/

## ORDER

In this civil rights complaint under 42 U.S.C. § 1983, our Plaintiff, Rayquan Burgess, alleges that "Palm Beach County Jail officials failed to protect him from attack by other inmates then unreasonably delayed his medical treatment . . . in disregard to his safety and health." Amended Complaint [ECF No. 11] ¶ 1. We previously ordered Burgess to file this Amended Complaint after concluding that his original complaint was "an impermissible shotgun pleading" that didn't comply with Rule 8(a)(2). Order to Amend [ECF No. 8] at 7. We also found that Burgess had failed to state a claim against some of the defendants he'd named. *See ibid.* After screening Burgess's Amended Complaint under 28 U.S.C. § 1915A, we find that he's fixed the procedural defects we identified in our Order to Amend. Still, he's failed to state a claim against some of the Defendants. We therefore **DISMISS** the Amended Complaint **in part** and allow the rest to **PROCEED** to service.

### THE LAW

The Court "*shall* review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A (emphasis added). The definition of a "prisoner" includes "any person incarcerated or detained in any facility who is . . . accused of [or] convicted of . . . violations of criminal law." *Id.* §1915A(c). In conducting

its screening of a prisoner's complaint, the Court must "dismiss the complaint, or any portion of the complaint," when it is: (1) "frivolous, malicious, or fails to state a claim upon which relief may be granted"; or (2) "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b). When screening a complaint under § 1915A, we must "tak[e] the allegations in the complaint as true." *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006), *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010).

To state a claim upon which relief may be granted, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level"—with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Under this standard, legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks omitted).

## ANALYSIS

In his Amended Complaint, Burgess names seven Defendants—all in their individual capacities[1]: the Palm Beach County Sheriff's Office ("PBSO"), Captain John Cardaropoli, Captain "K.

---

[1] Burgess does say that he's suing Deputy Williams in his *official capacity*. *See* Amended Complaint ¶ 7. But, for three reasons, we think this is either a scrivener's error or some other inadvertent mistake. *First*, Burgess has sued all the other individual Defendants in their individual capacities, and he gives us no good reason to believe that his suit against Deputy Williams should be treated any differently. *Second*, Burgess is suing Deputy Williams for monetary damages, *see id* ¶ 53, and we've already told Burgess that "state officials sued for damages in their official capacity are immune from suit in federal court," Order to Amend at 4 (quoting *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994)). *Third*, Burgess alleges that Deputy Williams "acted with careless, reckless, gross negligence and deliberate indifference in failing to adequately protect Burgess," Amended Complaint ¶ 47, which isn't the kind of language one would typically use when suing someone in his official capacity. After all, a party can only be sued in his official capacity if "the entity's 'policy or custom' . . . played a part in the violation of federal law"—and not (as Burgess alleges here) when the party's careless, reckless, or negligent conduct "caused the deprivation of a federal right." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (cleaned up). Consistent with our obligation to "liberally construe[ ] . . . *pro se* complaint[s]," *Erickson*

Kinsey," "Deputy Williams," Sergeant Endora Thurmond, Sheriff Ric Bradshaw, and Palm Beach County. *See* Amended Complaint ¶¶ 4–10. Burgess says that he alerted an unnamed "intake classification member" in late March 2023 that he didn't want to be housed in the "South 8-B" or "South 4-D" dormitories because he'd been assaulted there before. *Id.* ¶¶ 14–15. Despite this warning, Burgess was placed in "South 4-D," even though he'd been told that "an additional member of classification [would] interview him for a pre-housing assignment." *Id.* ¶¶ 14, 17. Unfortunately for Burgess, on April 8, 2023, another inmate beat and "violently stabbed" him, after which he bled profusely. *Id.* ¶ 18. Rather than administer medical treatment to Burgess, though, Sergeant Thurmond "conducted a search of the dorm," handcuffed Burgess, and ordered Burgess to "wait in the vestibule" until she'd completed her investigation. *Id.* ¶ 19. Burgess only received medical treatment after a nurse noticed that he'd "partial[ly] los[t] consciousness[.]" *Id.* ¶ 20.

Based on these factual allegations, Burgess divides the Amended Complaint into four counts: (1) a supervisory-liability claim against the seven Defendants, *id.* ¶¶ 24–31; (2) a deliberate-indifference-to-safety claim against Captain Kinsey, *id.* ¶¶ 32–38; (3) a deliberate-indifference-to-serious-medical-needs claim against Sergeant Thurmond, *id.* ¶¶ 39–45; and (4) a deliberate-indifference-to-safety claim against Deputy Williams, *id.* ¶¶ 46–53. After careful review, we find that Burgess's second, third, and fourth counts can proceed to service. The first count, by contrast, we dismiss *in part*.

### A. Count 1: The Supervisory-Liability Claim

Burgess's first count is (admittedly) hard to follow. Burgess blames each of the seven Defendants for "letting prisoners in a maximum security dorm . . . intermingle without adequate supervision" and for "delaying a seriously injured inmate from receiving medical treatment." *Id.* ¶¶

---

*v. Pardus*, 551 U.S. 89, 94 (2007), we find that Burgess has asserted an *individual*-capacity claim against Deputy Williams.

3

27–28. Doing our very best, we've construed this count as asserting a supervisory-liability claim, which arises when a supervisory official "personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).

We'll start with the Defendants against whom Burgess has *obviously* failed to state a supervisory-liability claim. *First*, PBSO is not a "legal entit[y] subject to suit" under § 1983, *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992)—and, in any event, it's a duplicative defendant since Burgess has already sued the head of the PBSO: Sheriff Bradshaw, *see Navarro v. City of Riviera Beach*, 192 F. Supp. 3d 1353, 1361 (S.D. Fla. 2016) (Bloom, J.) ("Thus, the Sheriff . . . , and not the county 'Sheriff's Office,' is the proper party to an action against the Sheriff[.]"). *Second*, Palm Beach County is a municipality and, as such, cannot be sued in its "individual capacity." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (holding that "direct suits against municipalities" are "functionally equivalent" to "suits against a municipal officer sued in his official capacity"). And we've already held that Palm Beach County can't be sued in its official capacity, either, because Sheriff Bradshaw "is the only official who oversees 'the daily operation of the jails and the supervision of inmates'" and, therefore, is the only party who's responsible "for the Jail's allegedly unconstitutional policies or customs." Order to Amend at 6 (quoting *Jones ex rel. Albert v. Lamberti*, 2008 WL 4070293, at *4 (S.D. Fla. Aug. 28, 2008) (Cooke, J.)). *Third*, Burgess's supervisory-liability claims against Sergeant Thurmond, Captain Kinsey, and Deputy Williams are duplicative of the allegations he's advanced in Counts 2, 3, and 4 (*viz.*, that these Defendants "personally participate[d] in the alleged unconstitutional conduct"). Rather than consider the same allegations twice, we'll dismiss these Defendants from Count 1. *See Manning v. Carnival Corp.*, 2012 WL 3962997, at *2 (S.D. Fla. Sept. 11, 2012) (Altonaga, J.) ("To promote judicial economy, a court 'should dismiss claims that are duplicative of other claims.'" (quoting *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 81 (D.D.C. 2010))).

That leaves us with two *potentially* viable Defendants in Count 1: Sheriff Bradshaw and Captain Cardaropoli. For either of these Defendants to be liable under § 1983, Burgess must show that there was a "causal connection between the[ir] actions . . . and the alleged constitutional deprivation" by establishing: (1) "a history of widespread abuse [that] puts the reasonable supervisor on notice of the need to correct the alleged deprivation, and he fails to do so"; (2) "a supervisor's custom or policy [that] results in deliberate indifference to constitutional rights"; or (3) the supervisor's failure "to adequately train [his] officers[.]" *Christmas v. Harris Cnty., Ga.*, 51 F.4th 1348, 1355 (11th Cir. 2022) (cleaned up).

Starting with Sheriff Bradshaw, Burgess alleges that he "negligently operated and managed the Palm Beach County Jail" by (1) hiring employees with "poor character and judgment," (2) failing to create policies or rules that "reasonably protect Burgess and others detained within the jail from being exposed to a substantial risk of harm," and (3) failing to "supervise and review the operation and management of [the] Jail." Amended Complaint ¶ 26.[2] Burgess's allegations against Captain Cardaropoli are much harder to parse. As far as we can tell, Burgess claims that Captain Cardaropoli "failed to properly supervise the actions of county jail officials," and that he "should have known" that the Jail's policies would allow "some inmates [to] become victims of attack by other inmates[.]" *Id.* ¶¶ 5, 27. Liberally construed, these allegations suggest that Captain Cardaropoli (in concert with Sheriff Bradshaw) (1) implemented unconstitutional policies or customs and (2) failed to adequately supervise his subordinates.

Beginning with implementation, Burgess has plausibly alleged that Sheriff Bradshaw—but not Captain Cardaropoli—was responsible for an unconstitutional custom of "letting prisoners in a maximum security dorm . . . intermingle without adequate supervision[.]" *Id.* ¶ 27. "A custom is an

---

[2] Although some of Burgess's allegations contradict one another, he's still allowed (at this very early stage of the proceedings) to "set out 2 or more statements of a claim or defense alternatively or hypothetically," even if the claims themselves are inconsistent. FED. R. CIV. P. 8(d)(2)–(3).

5

unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1332 (11th Cir. 2007). According to Burgess, the Jail allows prisoners in its maximum-security dorms to comingle with each other freely and with only minimal supervision from prison officials. *See* Amended Complaint ¶¶ 26–27. This "custom" has caused many inmates—including Burgess on *multiple occasions*—to become "victims of attack" by other inmates who are known to be "combative." *Id.* ¶ 27. These assertions are sufficient to establish a "causal connection" between this allegedly unconstitutional custom and Burgess's injuries. *Cottone*, 326 F.3d at 1360. But only Sheriff Bradshaw (according to Burgess) is responsible for this custom. Although Captain Cardaropoli is "entrusted to supervise all areas of security," Amended Complaint ¶ 5, Sheriff Bradshaw is the *only* defendant "who creates the policies, customs, practices, rules, regulations, procedures that the jail must follow and the fact he oversees the daily operation of the jail and the supervision of the inmates[,]" *id.* ¶ 23 (errors in original). Burgess, in short, fails to allege that Captain Cardaropoli is responsible for implementing any policies or customs—and, as a result, fails to allege a "causal connection" between a custom Captain Cardaropoli was responsible for and "the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360. Captain Cardaropoli thus isn't a proper defendant here.

Burgess also says that the Jail has a "policy" (as opposed to an unwritten or informal "custom") of withholding medical treatment from seriously injured inmates until Jail officials can complete an "investigation." *See* Amended Complaint ¶ 28 ("[I]t was confirmed by Captain John Cardaropoli that unconstitutional customs of detaining and delaying a seriously injured inmate from receiving medical treatment to conduct an investigation is allowed per policies, rules, regulations, and procedure[.]"). But, even accepting everything in the Amended Complaint as true, this conclusory assertion isn't enough to state a viable claim. A policy is "a decision that is officially adopted" as "a persistent and wide-spread practice." *Christmas*, 51 F.4th at 1356. Notwithstanding Captain Cardaropoli's

6

"admission" that Jail officials *should* delay giving treatment until an "investigation" has been completed, Burgess hasn't suggested that this "policy" ever resulted in harm to another inmate. *See generally* Amended Complaint. And the law is clear that "[a] single incident [is] not so pervasive as to be a custom or practice." *Greech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1330 n.6 (11th Cir. 2003) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985)). Burgess has thus failed to show that the Jail implemented a "persistent and wide-spread" policy or custom of delaying (pending an internal inquest) medical treatment for injured inmates.

On the other hand, Burgess *has* successfully alleged that both Sheriff Bradshaw and Captain Cardaropoli failed to supervise their subordinates and that this lack of supervision caused his injuries. "[A]n allegation of a failure to train or supervise can be the basis for liability under § 1983. The Supreme Court has instructed that these 'limited circumstances' occur only when the municipality inadequately trains or supervises its employees, this failure to train or supervise is a [policy], and that [the policy] causes the employees to violate a citizen's constitutional rights." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing *City of Canton v. Harris*, 489 U.S. 378, 387, 389–91 (1989)). In other words, Burgess must show that the Defendants "knew of a need to [supervise] in a particular area [but] made a deliberate choice not to take any action." *Ibid.* Burgess claims that both Sheriff Bradshaw and Captain Cardaropoli knew that "the number of guards [in the dormitories] was insufficient to prevent [attacks] and [would be] inadequate to rescue inmates from attacks." Amended Complaint ¶ 27. And yet (Burgess alleges), both Defendants failed to supervise the security of the prison dormitories—even though it was "highly foreseeable that some inmates would become victims of attack by other inmates[.]" *Ibid.* Burgess has adequately pled—at this early stage of the case—a failure-to-supervise claim against Sheriff Bradshaw and Captain Cardaropoli.

Finally, we turn to Burgess's accusation that Sheriff Bradshaw hired employees of "poor character and judgment as to be unfit" to ensure the safety of the Jail's prisoners. *Id.* ¶ 26. Here, we

7

assume that Burgess is advancing a negligent-hiring claim against Sheriff Bradshaw. Although a claim of negligent hiring *typically* arises under state law, "claims of negligent hiring and retention brought against a municipality under § 1983 are not without precedent." *Paul v. Bradshaw*, 2013 WL 12084298, at *8 (S.D. Fla. Aug. 7, 2013) (Rosenbaum, J.) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 405 (1997)); *see also Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1313 (11th Cir. 2001) ("To impose § 1983 liability based on a hiring decision, a plaintiff must demonstrate that the municipal actor disregarded a known or obvious consequence of hiring the applicant.").³ Burgess says that Sheriff Bradshaw "kn[ew] or should have known" that his subordinates (*i.e.*, the other Defendants in this case) were of "poor character and judgment"—and, therefore, that they wouldn't "reasonably protect Burgess and others detained within the Jail from being exposed to [a] substantial risk of harm" and would instead "intentional[ly] inflict[ ] harm" on the Jail's inmates. Amended Complaint ¶ 26. When we accept Burgess's factual allegations as true (as we must at this stage of the case), we conclude that Burgess has done enough to advance a negligent-hiring claim against Sheriff Bradshaw. *See Brown*, 520 U.S. at 411 ("Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'").

---

³ We presume that Burgess intended to bring his negligent-hiring claim under § 1983 (rather than under Florida tort law). Burgess, after all, never mentions state law in his Amended Complaint—and it seems clear to us that he intended his negligent-hiring claim to serve as an *alternative* means of pleading supervisory liability against Sheriff Bradshaw (as opposed to stating a *new* state-law tort claim). *See* Amended Complaint ¶ 1 (asserting that the Defendants violated his "rights, privileges, [and] immunities secured to him by the Eighth and Fourteenth Amendments of the U.S. Constitution"); *id.* ¶ 26 (listing negligent hiring as one of the ways in which Sheriff Bradshaw violated Burgess's constitutional rights). If we're mistaken about this, Burgess may correct our misperception by filing a second amended complaint—in which he may try to advance a negligent-hiring claim under Florida law against Sheriff Bradshaw. Any such second amended complaint must, of course, comply with FED. R. CIV. P. 15.

To summarize our holding on Count 1: (1) We **DISMISS** for failure to state a claim all supervisory-liability claims against the PBSO, Captain Kinsey, Deputy Williams, Sergeant Thurmond, and Palm Beach County; (2) we **ALLOW** Burgess's supervisory-liability claim to proceed against Sheriff Bradshaw—*except* for Burgess's claim that Sheriff Bradshaw implemented an unconstitutional policy of unreasonably delaying medical treatment to an injured inmate; (3) we **ALLOW** Burgess to bring a supervisory-liability claim against Captain Cardaropoli—*but only* on the theory that he failed to supervise his subordinates; and (4) we **DISMISS** for failure to state a claim any other supervisory-liability claims against Captain Cardaropoli and Sheriff Bradshaw.

### B.  Count 2: Deliberate Indifference Against Captain Kinsey

In Count 2, Burgess says that Captain Kinsey—the Jail's "classification administrator"—was deliberately indifferent to his safety when she failed to move Burgess to a new dorm before he was attacked on April 8, 2023. *See* Amended Complaint ¶ 35 ("[H]ad Captain Kinsey made responsible inquiry as her job requires she would have discovered . . . the on-going threat/danger Burgess faced in South 4-D, especially in light of the previous assault on him in that same dorm[.]" (errors in original)). Burgess insists that Captain Kinsey was aware he wasn't safe in the South 4-D dormitory, because she knew that Burgess had been attacked in that same dorm "90 days prior[.]" *Id.* ¶ 33. Still, Burgess claims, Kinsey refused to move Burgess to a new unit because Burgess "was unable to identify all [of the] assailants[.]" *Id.* ¶ 35. In Burgess's view, Captain Kinsey's refusal to move him to a new dorm was the "direct and proximate [cause]" of his being "beaten and violently stabbed and hospitalized" on April 8, 2023. *Id.* ¶ 37.

A defendant is deliberately indifferent to an inmate's safety when there is: "(1) a substantial risk of serious harm; (2) the defendant[ ] [is] deliberate[ly] indifferent to that risk; and (3) causation." *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013). "Deliberate indifference in the context of a failure to prevent harm has a subjective and an objective component, i.e., a plaintiff must show both

9

that the defendant actually (subjectively) knew that an inmate faced a substantial risk of serious harm and that the defendant disregarded that risk by failing to respond to it in an (objectively) reasonable manner." *Bowen v. Warden, Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016) (cleaned up).

Burgess has adequately alleged (1) that Captain Kinsey knew he'd been "assaulted in the same dorm (South 4-D) by multiple combative inmates," (2) that Captain Kinsey didn't change Burgess's housing assignment despite this knowledge, and (3) that, because of her refusal to transfer him, Burgess was attacked again and suffered severe injuries. Amended Complaint ¶ 33. That's sufficient to establish a deliberate-indifference-to-safety claim. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1102 (11th Cir. 2014) ("[T]his Court already clarified that a prison guard violates a prisoner's Eighth Amendment right when that guard actually (objectively and subjectively) knows that one prisoner poses a substantial risk of serious harm to another, yet fails to take any action to investigate, mitigate, or monitor that substantial risk of serious harm."). We'll therefore **ALLOW** Count 2 to proceed against Captain Kinsey.

### C. Count 3: Deliberate Indifference Against Sergeant Thurmond

Count 3 asserts a viable deliberate-indifference-to-serious-medical-needs claim against Sergeant Thurmond. Sergeant Thurmond responded to the scene after Burgess was attacked on April 8, 2023. Rather than administer medical treatment, however, Sergeant Thurmond "made [Burgess] wait inside of the vestibule and placed [him] in handcuffs," even though Burgess was "bleeding out." Amended Complaint ¶ 41. Burgess says that he "suffered unnecessary physical pains and mental pains" because of this treatment delay. *Id.* ¶ 44. We agree with Burgess that this is a clear-cut example of deliberate indifference.

"To prevail on a deliberate indifference to serious medical need claim, Plaintiffs must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07

(11th Cir. 2009). Burgess alleges that, rather than treat his stab wounds (which were bleeding profusely), Sergeant Thurmond detained him while she investigated the incident. *See* Amended Complaint ¶¶ 40–43. Sergeant Thurmond's (alleged) decision to "delay[ ] necessary treatment for non-medical reasons" would, if true, constitute deliberate indifference under binding Eleventh Circuit precedent. *Farrow v. West*, 320 F.3d 1235, 1246 (11th Cir. 2003); *see also, e.g.*, *Knowles v. Clifton*, 2016 WL 3633400, at *5 (S.D. Ga. June 29, 2016) (Baker, Mag. J.) ("According to Plaintiff, at the time he was arrested, he had a stab wound in the back of his head [and] his clothes were covered in blood. These medical needs are so obvious that even a lay person would easily recognize the necessity for a doctor's attention. . . . Despite these obvious medical needs and Plaintiff's requests for medical treatment, Defendants allegedly refused to provide Plaintiff any medical care. Based on these allegations, Plaintiff has stated a plausible claim for relief." (cleaned up)), *report and recommendation adopted*, 2016 WL 4432700 (S.D. Ga. Aug. 17, 2016) (Hall, J.).

Count 3, therefore, may **PROCEED** against Sergeant Thurmond.

### D.  Count 4: Deliberate Indifference Against Deputy Williams

In his final claim, Burgess asserts a deliberate-indifference-to-safety claim against Deputy Williams. Deputy Williams (Burgess says) *admitted* that he knew Burgess would be attacked. *See* Amended Complaint ¶ 50 ("During Burgess transport back to the hospital . . . Deputy Williams confessed to Burgess to having knowledge of the risk he faced but chose to disregard it which led to Burgess getting injured." (errors in original)). If that's true, then Deputy Williams would have been deliberately indifferent to Burgess's safety. *See Caldwell*, 748 F.3d at 1099 ("A prison official violates the Eighth Amendment 'when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk.'" (quoting *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003))).

Count 4, therefore, may **PROCEED** against Deputy Williams.

\*   \*   \*

Having screened the Amended Complaint under the provisions of 28 U.S.C. § 1915A, we hereby **ORDER AND ADJUDGE** as follows:

1. Burgess's Amended Complaint [ECF No. 11] may **PROCEED** in full as to Counts 2, 3, and 4.

2. Count 1 is **DISMISSED in part**. Count 1 may **PROCEED** against Captain Cardaropoli—*but only* on the claim that Cardaropoli failed to supervise his subordinates. Count 1 may also **PROCEED** against Sheriff Bradshaw on all claims—*except* the one alleging that Bradshaw implemented an unconstitutional policy of delaying treatment for injured inmates. Any other claim raised in Count 1 is **DISMISSED**.

3. Burgess's claims against Palm Beach County and the Palm Beach County Sheriff's Office are **DISMISSED** for failure to state a claim. The Clerk shall **TERMINATE** these Defendants from this case.

4. Burgess's Amended Motion to Proceed *in forma pauperis* [ECF No. 12] is **GRANTED**. Burgess shall owe the United States $350.00, which Burgess must pay to the Clerk of Court as funds become available. To effectuate those payments, the agency with custody over the Plaintiff must forward these payments from the Plaintiff's prisoner account to the Clerk of Court anytime the account balance exceeds $10.00. That agency shall continue to make these payments until the Plaintiff has paid the filing fees in full. The Clerk **SHALL** send a copy of this Order to the Palm Beach County Sheriff's Office and this Court's Financial Department.

5. The Court will direct the U.S. Marshal's Service to serve the appropriate Defendants in a separate order. *See* FED. R. CIV. P. 4(c)(3).

6. This case shall remain **CLOSED**. Any party may move to reopen the case once **all Defendants** have been served.

**DONE AND ORDERED** in the Southern District of Florida on November 9, 2023.

_____
**ROY K. ALTMAN
UNITED STATES DISTRICT JUDGE**

cc:   Rayquan Burgess, *pro se*

Palm Beach County Sheriff's Office
ATTN: Inmate Trust Fund Department
3228 Gun Club Road
West Palm Beach, FL 33406

Financial Department,
United States District Court, Southern District of Florida